## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Christopher Moore, being hereby duly sworn, depose and state as follows:

1.      I make this affidavit in support of an application for a search warrant for content and records occurring within a certain "Justfor.fans" account, controlled by JFF Publications LLC, identified as https://justfor.fans/your_son. As will be shown below, there is probable cause to believe an individual identified as **Wyatt Maxwell** utilizing the "Justfor.fans" site, and account https://justfor.fans/your_son, produced, distributed and/or possessed child pornography, and conspired to transport a minor in interstate commerce with the intent to engage in sexual activity, in violation of Title 18, United States Code, Sections 2251, 2252, 2252A, and 2423.

2.      The content and records associated with https://justfor.fans/your_son are stored at premises owned, maintained, controlled, or operated by JFF Publications LLC, headquartered at 2742 NE 8th Ave, Wilton Manors, Florida 33334. The information to be searched is described in the following paragraphs and in the attachments to this affidavit. This affidavit is made in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require JFF Publications LLC to disclose to the government records and other information in its possession, pertaining to the subscriber or customer operating the accounts identified as being associated with the aforementioned username.

3.      The affiant, Detective Christopher Moore, is a certified law enforcement officer in the state of Kansas and has been for approximately 16 years. Affiant is currently assigned to the FBI Child Exploitation Task Force, Kansas City, Missouri. Since November 2013, affiant has been assigned to investigate computer crimes to include violations against children. Affiant has gained expertise in the conduct of such investigations through seminars, classes, and everyday work

related to conducting these types of investigations. Affiant has conducted and assisted with hundreds of investigations involving the exploitation of children. Affiant has attended the annual Crimes Against Children Conference, BitTorrent File Sharing Investigations class, ARES File Sharing Investigations class, Gigatribe File Sharing Investigations Class, FBI Undercover Chat Investigations Class, and is certified through the FBI as an OCE (Online Covert Employee).

4.      At all times throughout this affidavit I use the term "child pornography" merely as shorthand to refer to visual depictions of actual minors engaged in sexually explicit conduct. I use the terms "visual depiction," "minor," and "sexually explicit conduct" as those terms are defined in 18 U.S.C. § 2256 (See Definition Section below).

5.      This affidavit is based upon information I have gained from my investigation as well as my training and experience. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe evidence, fruits, and instrumentalities of the violation of Title 18, United States Code, Sections 2251, 2252, 2252A, and 2423 are presently stored within the "Justfor.fans" account with the username referenced above. Specifically, I have reason to believe that this "Justfor.fans" account, maintained by JFF Publications LLC will have stored information and communications that are relevant to this investigation.

## STATUTORY AUTHORITY

6.      This investigation concerns alleged violations of 18 U.S.C. §§ 2251, 2252, 2252A, and 2423 relating to material involving the sexual exploitation of minors.

        a.      18 U.S.C. § 2251(a) prohibits a person from knowingly using, enticing or coercing a minor to engage in sexually explicit conduct for the purpose of producing any visual

depiction of such conduct;

b.      18 U.S.C. § 2252(a) prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce;

c.      18 U.S.C. § 2252A(a)(1) and (2) prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in 18 U.S.C. § 2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce;

d.      18 U.S.C. § 2252A(a)(3) prohibits a person from knowingly reproducing child pornography for distribution through the mail or in interstate or foreign commerce by any means, including by computer;

e.      18 U.S.C. § 2423 prohibits a person from knowingly transporting an individual in interstate commerce, who has not attained the age of 18 at the time, for the purpose of sexual activity.

## **DEFINITIONS**

7.      The following definitions apply to this Affidavit and Attachment A to this Affidavit:

a.      "Child Erotica," as used herein, means materials or items that are sexually

arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

b. "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct (see 18 U.S.C. §§ 2252 and 2256(2)).

c. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

d. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. See 18 U.S.C. § 2256(2).

e. "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards,

printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

f.  "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

g.  "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which preform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

h.  "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. The IP address provides a unique location making it possible for data to be transferred between computers. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

i.  The terms "records," "documents," and "materials," as used herein, include

5

all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

8.      Computers and computer technology have revolutionized the way in which individuals interested in child pornography interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. There were definable costs involved with the production of pornographic images. To distribute these on any scale required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings and telephone calls.

9.      The development of computers has changed this. Computers basically serve four functions in connection with child pornography:  production, communication, distribution, and storage.

10. Child pornographers can now transfer photographs from a camera onto a computer-readable format with a device known as a scanner. With the advent of digital cameras, the images can now be transferred directly onto a computer. A device known as a modem allows any computer to connect to another computer using telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

11. A smartphone, or smart phone, is a mobile phone with more advanced computing capability and connectivity than basic feature phones. Early smartphones typically combined the features of a mobile phone with those of another popular consumer device, such as a personal digital assistant (PDA), a media player, a digital camera, or a GPS navigation unit. Modern smartphones include all of those features plus the features of a touchscreen computer, including web browsing, Wi-Fi capability, and apps. Frequently, smartphones also include removable storage devices, or SD cards, where users can store data, including picture and video files.

12. Smart phone technology has expanded computer capability in recent years by allowing users to access the Internet via their phone. The smart phone user can search the Internet for specific files, check personal email accounts, log on to social networking sites, communicate with other computer users, compose, and edit documents, and store and view movie and picture files.

13.     The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

14.     Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

15.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, i.e., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

16.     A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, evidence of child pornography can be found on the user's computer in most cases.

## **TECHNICAL INFORMATION REGARDING JUSTFOR.FANS**

17.     "Justfor.fans" is a social media website and application service which allows Users to create a profile, upload photos and videos onto their profile, set a monthly subscription price payable by other users who wish to view their user content and thereby generate revenue from fans.

18.     "Justfor.fans" is offered and available only to users who are 18 years of age or older. In order to upload content, or be a participant in "Justfor.fans" content, one must upload a picture of an official ID (Driver's License, ID card, etc.…), and a "selfie" of the participant next to their official ID.

19.     To become a User, you must register and create a user account on "Justfor.fans". You must provide a valid email address, a username, and a password. It is a condition of your use of the website that all the information you provide on the website is correct, current, and complete.

20.     In my training and experience, distributors and traders of child pornography have been known to maintain online profiles to conduct and facilitate their distribution and trading activities.

21.     As explained herein, information stored in connection with a "Justfor.fans" account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each offense-element, or, alternatively, to exclude the innocent from further suspicions. The information stored

in connection with a "Justfor.fans" account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

22.     The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

23.     The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography, but which nonetheless fuel their deviant sexual fantasies involving children.

24.     The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

25.     The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying

those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

26.     The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange, or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

27.     The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials.

## BACKGROUND OF THE INVESTIGATION

28.     In February of 2021, the Overland Park, Kansas Police Department received two anonymous tips through Greater Kansas City Crime Stoppers. The tips alleged **Wyatt Maxwell** was producing child pornography with a 16-year-old male, "N.J", who resides in Overland Park, Kansas. **Maxwell** was then uploading the child pornography to various online accounts including an "OnlyFans" account identified as https://onlyfans.com/kiphuxleyxxx, a Twitter account identified as https://mobile.twitter.com/realnaughtybros, and a "Justfor.fans" account identified as https://justforfans/your_son.

29.     Based on information included in the Crime Stoppers tips, Overland Park Police Department Detective Bilderback obtained school records for "N.J" and confirmed he was 16 years old. Detective Bilderback also obtained a Missouri Driver's License photo for **Wyatt Maxwell.**

**Maxwell**'s date of birth is recorded on the license as April 20, 1999.

30.    Detective Bilderback visited the "Justfor.fans" site https://justfor.fans/your_son. Although the site charges $14.99 for access to this user's content, it does, however, allow for 15 second previews free of charge. Detective Bilderback viewed the preview clips and found approximately 20 to contain pornographic content depicting sexual acts between **Maxwell**, and "N.J.".

31.    On February 2, 2021, "N.J." was interviewed by Detective Bilderback, and TFO Moore. "N.J." advised he had been making pornographic videos with **Maxwell** for several months, many of which were uploaded to "OnlyFans" or "Justfor.fans". Some of the recordings were created at **Maxwell's** residence, and some were created in a park near **Maxwell's** residence. "N.J." advised **Maxwell** used his iPhone to create the recordings. "N.J." advised **Maxwell** believed him to be 19 years of age.

32.    On February 3, 2021, **Maxwell** was interviewed at his residence, located at 520 Pierce Ave, Kansas City, Missouri. **Maxwell** confirmed he had an "OnlyFans" account and a "Justfor.fans" account to which he uploads identical videos. Maxwell advised he uses a Twitter account to advertise the pages and identified the Twitter accounts "someones_son", and "naughtybros" as being accounts he has used. **Maxwell** advised he is the only one who can post on these accounts and only he has the password. **Maxwell** charges $15.00 per month for individuals to follow these pages and view their content. He makes varying amounts of money from his accounts, and estimated he made $10,000.00 on his best month, and $3,000.00 on his worst month.

33.    **Maxwell** has known "N.J." for approximately 3 years. **Maxwell** knows "N.J." to attend a high school in Johnson County, Kansas.

34.     **Maxwell** advised he has had concerns about "N.J's" age in the past, but advised none of his concerns were serious. **Maxwell** has had conversations with "N.J" in which "N.J" either told **Maxwell** he was 18, or that he didn't wish to talk about his age, which caused Maxwell some concern.

35.     **Maxwell** advised he has filmed approximately 20 videos where he was engaged in some type of sex act with "N.J.". The latest video was filmed in **Maxwell's** kitchen on either January 23 or January 24, 2021. The videos he filmed with "N.J." were uploaded to his "OnlyFans", and "Justfor.fans" accounts. **Maxwell** looked for a photo he would have uploaded to "OnlyFans", or "Justfor.fans" to verify "N.J.'s" age but was unable to find one.

36.     **Maxwell** gave verbal and written consent to search his cell phone. TFO Moore observed web pages on Maxwell's cell phone logged into the accounts https://onlyfans.com/kiphuxleyxxx, and https://justforfans/your_son. His cell phone was later downloaded using a Cellebrite Universal Forensic Extraction Device. This is software commonly used by Law Enforcement to extract information from cell phones. TFO Moore reviewed the download and located chats indicating **Maxwell** knew "N.J.'s" actual age. Excerpts of the conversations are as follows:

>     -*Conversation between Maxwell and "N.J." on January 4, 2021*
>
>             ***Maxwell****: You can move in with me*
>
>             *"N.J.": after I'm 18 yes*
>
>             ***Maxwell****: Lol*
>
>     -*Conversation between Maxwell and (901)634-4546 on January 29, 2021*
>
>             ***Maxwell****:  I have "N.J." coming over today*
>
>             *(901)634-4546: Who's that*

*Maxwell*: The 16

## DESCRIPTION OF THE ITEMS TO BE SEARCHED

37.     The location to be searched is the "Justfor.fans" account identified as https://justfor.fans/your_son. The account is held by JFF Publications LLC, located at 2742 NE 8th Ave, Wilton Manors, Florida 33334 which is the location the warrant will be served.

38.     On February 4, 2021, TFO Moore sent a request to JFF Publications LLC LLC, 2742 NE 8th Ave, Wilton Manors, Florida 33334, that they preserve items described in Attachment B, for a period of 90 Days.

39.     I anticipate executing this warrant under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require JFF Publications LLC to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

40.     For the reasons stated above, your affiant respectfully submits that there is probable cause to believe that a "Justfor.fans" account identified as https://justfor.fans/your_son contains evidence of a crime, contraband, and/or fruits of a crime in violation of 18 U.S.C. §§ 2251, 2252, 2252A, and 2423. Additionally, there is probable cause to believe evidence of the commission of criminal offenses, namely, violations of 18 U.S.C. §§ 2251, 2252, 2252A, and 2423 is located within the "Justfor.fans" account, and this evidence, listed in Attachment B to this affidavit, which is incorporated herein by reference, is contraband, the fruits of crime, or things otherwise

criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

41.     Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

Christopher Moore
Task Force Officer
Federal Bureau of Investigation

Sworn and subscribed to before me via reliable electronic means on ___4th___ day of March 2021.
Telephonically

HONORABLE JILL A. MORRIS
United States Magistrate Judge
Western District of Missouri